IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>        *Plaintiff,*<br><br>v.<br><br>DAN RYAN BUILDERS, INC., et al.,<br><br>        *Defendants.* | Civil No.: ELH-11-02366 |

**MEMORANDUM OPINION**

On August 24, 2011, Evanston Insurance Company ("Evanston" or "Insurer"), plaintiff, filed this declaratory action against Dan Ryan Builders, Inc. ("DRB"); Dan Ryan Builders Realty, Inc. ("DRB Realty"); Daniel Ryan ("Ryan"); and David Doseff ("Doseff"), defendants, seeking a judicial determination that it owes no defense and/or indemnity obligations to defendants with respect to a civil action now pending against all of the defendants in a West Virginia state court (the "West Virginia case"). *See* Complaint For Declaratory Judgment ("Complaint," ECF 1).[1] On November 15, 2011, defendants moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. ("Motion," ECF 6), supported by a memorandum of law ("Memo," ECF 7). They urge the court to abstain from hearing the declaratory judgment case. Plaintiff opposes the Motion ("Opposition," ECF 9), to which defendants have replied ("Reply," ECF 10).

As the matter has been fully briefed, the Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

---

[1] Jurisdiction is based on diversity of citizenship. Complaint ¶ 6. *See* 28 U.S.C.§ 1332.

**Factual and Procedural Background**[2]

DRB is a construction company. Complaint ¶ 11. DRB Realty is an affiliate or subsidiary of DRB and serves as its selling agent. *Id.* ¶¶ 3, 12. Ryan and Doseff are "director[s], officer[s], principal[s] or employee[s] of DRB and/or DRB Realty." *Id.* ¶¶ 4-5. All of the defendants are citizens of Maryland. *Id.* ¶¶ 2-5. Evanston, a surplus lines insurer, is a citizen of Illinois. *Id.* ¶ 1. It issued a "Commercial Lines Policy" to DRB and DRB Realty (the "Policy"), which covered the period from of October 24, 2009, through October 24, 2010. *Id.* ¶ 10.

On August 29, 2004, Reshmajit and Gurmeet Chhina (the "Chhinas") contracted with DRB to purchase a home in Martinsburg, West Virginia (the "Home") that DRB had constructed. Complaint ¶ 11. On or about July 15, 2010, the Chhinas brought suit against DRB, DRB Realty, Ryan, and Doseff in the Circuit Court for Berkeley County, West Virginia, captioned *Reshmajit and Gurmeet Chhina v. Dan Ryan Builders, Inc., et al*, and docketed as Civil Action No. 10-C-583. *Id.* ¶¶ 9, 11. The "First Amended Complaint," filed May 27, 2011, is appended to the Complaint in this case as plaintiff's Exhibit A. It reflects that the Chhinas brought claims against defendants for fraud/fraudulent concealment, breach of contract, and negligence.

According to the allegations in the First Amended Complaint, prior to execution of the sales agreement for the Home, DRB Realty, as DRB's selling agent, presented the Chhinas with a property disclosure statement that "did not disclose any flooding, leaks or evidence of moisture" in the Home; "did not reveal that [the Home] was uninhabitable nor that the septic

---

[2] Typically, the Court construes the facts in the light most favorable to plaintiff, as the party opposing the Motion. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The facts here, however, are not in dispute. "When deciding a Rule 12(b)(1) motion, the Court may generally 'consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Puryear v. Hager*, No. 10-02162, 2010 WL 4868107, *2 (D. Md. Nov. 23, 2010). Therefore, I may consider documents associated with the West Virginia case that the parties have appended to their submissions.

system would fail"; and did not disclose that the Home "regularly flooded during major storm events." *Id.* ¶¶ 22-23. Because of these defects, the Chhinas claim that the Home is "worthless as a residential home." *Id.* ¶ 31.

As noted, Evanston brought the instant case to obtain a "judicial determination that it owes no defense and/or indemnity obligations to DRB and DRB Realty with respect to" the West Virginia case. Complaint ¶ 9. On November 4, 2011, three days after service was effected against defendants in this case, the Chhinas filed a Second Amended Complaint in the West Virginia case, made part of the record as defendants' Exhibit A, adding Evanston as a defendant and adding an additional count for "Declaratory Judgment—Evanston Insurance Company." In that Count, the Chhinas seek a declaration of the "rights, dues [sic] and obligations by and between the Defendants and their insurer, Evanston" and a declaration that "coverage exists in favor of said Defendants for those claims being pursued by [the Chhinas] in their Second Amended Complaint...." *Id.* at 13-14.

Thereafter, defendants filed the subject Motion. They argue that, in light of the Second Amended Complaint, "the same insurance coverage issues for which Evanston seeks resolution here are present, and will necessarily be decided" in the West Virginia case. Memo at 1-2. Therefore, defendants urge this Court, *id.* at 2, to abstain from hearing this case, under the rule articulated in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289-90 (1995), in which the United States Supreme Court held that it is within the discretion of a district court to decline to hear a declaratory judgment action when "parallel proceedings, presenting opportunity for ventilation of the same state law issues, [a]re underway in state court."

**Discussion**

I.

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton, supra,* 515 U.S. at 282. What the Fourth Circuit said in *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005), is apt: "'This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief.'…This discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court." *Id.* at 296-97 (Citation omitted).

> The Fourth Circuit has explained:
>
> [W]hen an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, even when the declaratory relief sought would serve a useful purpose.

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994), *abrogated on other grounds by Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257-58 (4th Cir. 1996) (recognizing that, in light of *Wilton*, *supra*, 515 U.S. 277, a district court's decision to stay a declaratory judgment action is reviewed for abuse of discretion). *See Ins. Co. of West v. Great Amer. Ins. Co.*, No. 09-CV-02150, 2010 WL 3896152, *2 (D. Nev. Sept. 29, 2010) ("Where, as here, a party requests declaratory relief, a motion to dismiss filed under Fed. R. Civ. Pro. 12(b)(1)…is treated as a request for the district court not to exercise jurisdiction over the case").

In *Poston,* the Fourth Circuit set forth four factors for district courts to consider when determining whether to abstain from exercising jurisdiction over a declaratory judgment action during the pendency of a parallel state proceeding:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ] (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'[; and (iv) ] whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'

*Poston,* 88 F.3d at 257 (citing *Nautilus,* 15 F.3d at 377).

## II.

### a.

The first factor pertains to "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." *Poston,* 88 F.3d at 257. Here, this factor dictates in favor of defendants.

Defendants correctly observe: "There can be no question that West Virginia has a compelling interest in having coverage issues determined in its courts regarding a lawsuit brought in West Virginia based on conduct occurring in West Virginia that allegedly caused damage to property located in West Virginia. Moreover, the federal interest in this action is minimal, as jurisdiction here is based solely on the diversity of the parties, and not on any question of federal law." Memo at 7-8.

Further, abstention under circumstances such as these would be the clear preference of the West Virginia courts. In *Christian v. Sizemore,* 383 S.E.2d 810 (W.Va. 1989), West Virginia's highest court, the Supreme Court of Appeals, permitted a plaintiff in a personal injury

action pending in West Virginia state court to amend her complaint to add a count for declaratory judgment against an insurer in order to determine its liability under the defendant's insurance policy after the insurer initiated a declaratory judgment action in federal court on the question of its liability under the insurance policy. The court reasoned, *id.* at 814:

> Permitting an adjudication of the respective rights and duties of the parties in the same proceeding as the underlying tort action…enhances judicial economy by avoiding multiple lawsuits and the possibility, as here, of separate proceedings in different courts.

*Accord West Virginia Ins. Co. v. Lambert*, 458 S.E.2d 774, 777 (W.Va. 1995).

The Insurer argues that Maryland has a strong interest in hearing its declaratory judgment action because "its law applies to the interpretation of the Policy, [and] to any duties owed by Evanston, and, also, because [DRB] is a Maryland Corporation, and DRB and DRB Realty have their principle [sic] places of business in Maryland." Opposition at 8.[3] For this proposition, Evanston relies heavily on *Minnesota Lawyers Mutual Insurance Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 355 F. App'x 698 (4th Cir. 2009), in which the Fourth Circuit reversed the Eastern District of Virginia's decision to dismiss a declaratory judgment action brought by an insurer because a parallel proceeding was pending in a Florida state court. The Fourth Circuit stated, *id.* at 703: "It is unreasonable to conclude that a Florida state court is a better arbiter of Virginia law than the Eastern District of Virginia. The Eastern District of Virginia has found that it 'is accustomed to applying Virginia law in declaratory judgment actions'" (citation omitted).

However, in *Antonelli* "the fundamental issue of whether the allegations in state court trigger the duties to defend and indemnify," *i.e.* the subject of the declaratory judgment action, "[would] not [have been] decided in the Florida litigation." *Id.* The Florida court was only asked to decide the merits of the underlying plaintiff's fraud, contract, and malpractice claims,

---

[3] That Maryland law would apply to the case at bar is not disputed.

while the Virginia court "was only faced with a contractual coverage issue." *Id.* at 703-04. By contrast, the plaintiffs in the West Virginia state case (*i.e.*, the Chhinas), *have* asked the West Virginia State court to decide the very same issues that Evanston has asked this Court to decide. Although this Court regularly applies Maryland law, the West Virginia courts are surely capable of doing so, just as this Court is asked, not infrequently, to apply the law of jurisdictions other than Maryland. The law relating to insurance coverage is not necessarily complicated, is not necessarily different from one jurisdiction to another, and, as discussed, *infra*, the decision will likely involve factual determinations that will arise directly out of the litigation in West Virginia. This Court's expertise with Maryland law does not outweigh West Virginia's clear interest in avoiding conflicting outcomes, nor does it outweigh the interests of judicial economy.

b.

The second factor focuses on "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending." *Poston,* 88 F.3d at 257. It also weighs in favor of defendants.

In *Poston,* the Fourth Circuit affirmed the district court's dismissal of an insurer's declaratory judgment action in light of underlying tort proceedings pending in state court. The Court observed that consideration of "[s]everal of the factors we have endorsed for aid in making such decisions," *i.e.* the *Nautilus* factors, "lead to no obvious conclusion." *Id.* at 258. However, the Court held, *id*., that "[o]ne factor" was "particularly salient":

> [A]lthough issuance of a declaratory judgment would settle part of the controversy…it certainly would not settle the entire matter. The state litigation, on the other hand, could resolve all issues…. Concern for efficiency and judicial economy clearly support the district court's decision.

The West Virginia court has been asked to settle the same issues now pending before this Court, as well as the underlying tort claims. Thus, the West Virginia court could settle all claims in the matter, while this Court could, at best, achieve only a piecemeal result.

With respect to the second factor, plaintiff emphasizes that "this action was filed first," *i.e.* prior to the filing of the Second Amended Complaint in the West Virginia case, and reiterates that the instant case raises "issues the West Virginia state court is not accustomed to applying." Opposition at 12. The Insurer further argues that "this Court can determine quickly if Evanston owes defense obligations. If Evanston, however, is found to owe no duty to defend to [all] of the Dan Ryan defendants, there will be no piecemeal litigation." *Id.* These arguments are without merit. The race to the courthouse is not dispositive of efficiency. Nor is the courts' relative expertise with the application of Maryland law. And, plaintiff has provided no evidence that this Court's disposition of the issues would be "quicker" or more expeditious than that of the West Virginia court. Most important is what plaintiff does *not* say: if Evanston *is* found to owe a duty to defend, this Court would also have to address Evanston's duty to indemnify, which would, as discussed, *infra,* "likely depend on resolution of facts alleged in the complaint in the state court action." *Penn Nat. Ins. Co. v. Eastern Homes, Inc.*, No. RDB-07-672, 2007 WL 4179428, *7 (D. Md. Nov. 19, 2007).

c.

The third factor is "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'" *Poston,* 88 F.3d at 257. This factor, too, militates in defendants' favor.

In light of the Second Amended Complaint, the West Virginia case will involve litigation of the same issue of insurance coverage that this Court has been asked to resolve. Moreover, if this Court undertook plaintiff's declaratory judgment case, it would necessarily have to decide some of the same factual disputes that undergird the West Virginia case.

In *Penn National Insurance Co. v. Eastern Homes, Inc.*, No. RDB-07-672, 2007 WL 4179428 (D. Md. Nov. 19, 2007), the court was presented with circumstances analogous to those in the instant case: the court was asked to abstain from hearing an insurer's declaratory judgment case during the pendency, in state court, of related tort and contract claims. Judge Bennett held that "'the district court's efforts to decide the coverage issue would result in entanglement...with [the] state court proceedings by preempting critical factual findings that the state court will have to make' in adjudicating the underlying claims." *Id.* at *6 (citation omitted).

Judge Bennett acknowledged that the "duty to defend" decision would not involve factual findings, as "analyzing whether an insurer owes a duty to defend under Maryland law" requires a "two-part inquiry" through which the court will determine: "1) what the coverage is and what the defenses are under the policy's terms and requirements; and 2) whether the allegations in the tort action potentially bring the tort claim within the policy's coverage." *Id.* at *7 (citing *Clendenin Bros. v. United States Fire Ins. Co.,* 390 Md. 449, 889 A.2d 387, 393 (2006)). Neither prong requires a court to "engage in any fact-finding…since the task before the Court is 'determining whether *the allegations* of the complaint [in the state court action], if proved, would bring the claim within the coverage of the [ ] policy.'" *Id.* (citation omitted) (emphasis in original).

Yet, in holding that "the issues [we]re overlapping and could result in entanglement between this Court and the state court," the court noted that determination of the duty to indemnify "will likely depend on resolution of facts alleged in the complaint in the state court

action," *id*., such as "whether statutory liability exists or if exceptions applied, as well as when the alleged injuries took place and whether they occurred during each applicable policy period for the insured." *Id.* at *8.

In the case at bar, the Insurer states: "[I]t is true that, if a duty to defend is found to exist, the duty to indemnify will be determined by the facts established in the underlying action." Opposition at 14. And, the plain language of the Complaint indicates that Evanston is seeking a "judicial determination that it owes no defense *and/or indemnity* obligations to DRB and DRB Realty with respect to" the West Virginia case. Complaint ¶ 9 (emphasis added). The Insurer stresses that "Evanston is *initially* seeking a declaration of whether it owes a duty to defend…." Opposition at 11 (emphasis added). But, the Court's decision regarding abstention cannot ignore that plaintiff also seeks a declaration of whether it owes a duty to indemnify, and such a decision will "likely depend on resolution of facts alleged in the complaint in the state court action," such as the extent of defendants' intent and knowledge prior to the execution of the contract with the Chhinas, and the extent of the Chhinas' damages. *Eastern Homes,* 2007 WL 4179428 at *7.

d.

The fourth factor, "whether the declaratory judgment action is being used merely as a device for 'procedural fencing,'" is here inapplicable. *Poston,* 88 F.3d at 257. The fourth factor asks the court to deter "forum shopping." *Nautilus, supra*, 15 F.3d at 377. Plaintiff urges: "The attempt by the [Chhinas] to terminate this action, which was filed first, by adding a claim for declaratory relief in West Virginia state court should not be countenanced." Opposition at 15. Yet, as defendants note, they "brought neither the parallel suit nor this suit." Reply at 6. The Chhinas' conduct in the West Virginia case is of no import to my assessment of *the defendants'* position in this case.

**Conclusion**

For the foregoing reasons, the Court will grant the motion to dismiss filed by defendants Dan Ryan Builders, Inc.; Dan Ryan Builders Realty, Inc.; Daniel Ryan; and David Doseff (ECF 6).


Date:<u>February 13, 2012</u>                         /s/
                                                Ellen Lipton Hollander
                                                United States District Judge